UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **TOMMY EARL JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No.: **3:16-cv-00257** |
| | ) | **REEVES/SHIRLEY** |
| **BERNARD CLEMENT,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Before the Court is Defendants' construed Motion for Summary Judgment [Doc. 60], seeking dismissal of this pro se prisoner civil rights action arising under 42 U.S.C. § 1983. For the reasons set forth herein, the Court will **GRANT** Defendants' Motion [Doc. 60], **DENY AS MOOT** Defendants' Motion to Take Deposition [Doc. 75], and **DISMISS** this action **WITH PREJUDICE**.

**I.      PROCEDURAL BACKGROUND**

On May 20, 2016, Plaintiff Tommy Earl Jones, a pro se prisoner, filed a Complaint under 42 U.S.C. § 1983 [Doc. 2]. Over the course of the next nine months, Jones filed numerous amendments and supplements to his Complaint [Docs. 6, 8, 10-12, 14, 17-19, 21-23]. On February 22, 2017, the Court entered an Order granting Plaintiff's motion for leave to proceed *in forma pauperis* and screening Plaintiff's pleadings pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A [Doc. 24].[1] The Court dismissed numerous defendants and proposed claims, but it concluded that

---

[1] The Court found that Plaintiff met the imminent danger exception to 28 U.S.C. § 1915(g) based on his chronic medical conditions, and accordingly, Plaintiff's application for leave to proceed *in forma pauperis* was granted despite the fact that Plaintiff has had at least three previous civil rights actions dismissed as frivolous or for failure to state a claim [Doc. 24 at 1-5].

Plaintiff had stated plausible claims for Eighth Amendment medical deliberate indifference against several doctors and nurses who had treated him during his period of incarceration at Northeast Correctional Complex ("NECX") – Amy Bowen, Bernard Clement, and Heather Ollis – based on their alleged denial of pain medication for Plaintiff's chronic medical condition, Crohn's disease [*Id*.].

On August 24, 2017, Defendants Bowen, Clement, and Ollis filed their "Second Motion to Dismiss, or in the alternative, Motion for Summary Judgment" [Doc. 60].[2] Defendants argue that they are entitled to judgment as to Plaintiff's claim against them for refusal to prescribe pain medication [Doc. 61]. Defendants specifically argue that the evidence demonstrates that Plaintiff's claim amounts to no more than a dispute over the adequacy of his treatment – specifically, the

---

[2] In their first Motion, Defendants utilized the first two pages of their Memorandum to set forth a detailed summary of the specific conduct that led to Plaintiff's convictions for rape, theft, aggravated kidnapping, and aggravated burglary [Doc. 53 at 1-2]. In its August 24, 2017 Order denying Defendants' first motion to dismiss with leave to refile, the Court noted that "the criminal acts that Plaintiff committed in 2009 are wholly irrelevant to the issues in the instant suit, which involves various acts of alleged deliberate indifference to Plaintiff's medical needs by doctors and nurses at NECX in 2016," and "caution[ed] Defendants to avoid the inclusion of potentially prejudicial or inflammatory facts in future filings if such facts are not relevant to the matter before the Court" [Doc. 59 at 2-3 n.4].

Despite the Court's express warning, Defendants once against utilized the first two pages of their Memorandum to include a detailed summary of the same facts related to Plaintiff's underlying convictions [Doc. 61 at 1-2]. The Court notes that its electronic filing system reflects that counsel for Defendants filed the second motion to dismiss and supporting twelve-page memorandum – which is identical to its previously filed memorandum – less than forty-five minutes after the entry of the Court's Order denying the first such motion with leave to refile [*See* Docs. 59-61].

The Court finds no good faith basis for the inclusion of these facts under the circumstances. The criminal conduct that led to Plaintiff's convictions – however egregious it may be – bears no relevance to the issues before the Court in this action: that is, whether Defendants acted with deliberate indifference to Plaintiff's medical needs.

decision of the Defendants that narcotic pain medications should not be prescribed as part of Plaintiff's treatment for Crohn's disease [*Id*.].

On November 30, 2017, the Court entered an Order placing the parties on notice of the Court's intent to treat Defendants' Motion as one for summary judgment under Federal Rule of Civil Procedure 56 [Doc. 76]. The Court provided Plaintiff with an opportunity to file a belated response to the Motion and provided both parties with an additional opportunity to "present all material that is pertinent to the motion" [*Id*. at 4 (citing Fed. R. Civ. P. 12(d); Fed. R. Civ. P. 56(c)]. The Court noted that it would defer ruling on Defendants' Motion until this matter was fully briefed [*Id*.].

On December 6, 2017, Plaintiff filed his two-page response [Doc. 81]. Plaintiff stated that his response "shall reflect the §§ 1983 Complaint in its entirety," that he has presented all information in his control "for defendant's attorney to subpoena for the Court as exhibits," and that he further relies on "ruling of Sixth Circuit in Jones v. Cuddy and Jones v. Willie, et al." [*Id*.]. He argues that he is "disadvantaged" in this proceeding because he has been denied counsel and because he is in pain due to his underlying medical conditions [*Id*.]. Plaintiff did not attach an affidavit or any other evidence.[3]

In their December 13, 2017 reply, Defendants note that Plaintiff's filing fails to respond to the only issue before this Court on summary judgment: that is, whether the Defendants violated

---

[3] The Court notes that neither Plaintiff's brief nor his operative Complaint may be considered an affidavit or verified complaint, as both are unsworn and fail to meet the standard for an unsworn declaration as evidence. *See, e.g.*, 28 U.S.C. § 1746; *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs, Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010), for the proposition that a party cannot rely on allegations in unsworn filings in opposing summary judgment); *Walton v. Wheatly Co.*, 986 F.2d 1423 (6th Cir. 1993) (table).

the Eighth Amendment by refusing to acquiesce to Plaintiff's requests for prescriptions pain medications [Doc. 82]. Defendants reiterate that Plaintiff's claims raise nothing more than a dispute over the adequacy of his treatment – specifically, his disagreement with the medical judgments of the Defendants that Plaintiff should not be prescribed narcotic pain medication [*Id*.].

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment – and the Court to grant summary judgment – "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits and other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

4

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Id*. at 323. The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

As discussed above, Plaintiff failed to respond to Defendants' Motion for Summary Judgment with any supporting evidence, let alone probative evidence demonstrating that any dispute over material facts remain.[4] Nonetheless, a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not presented sufficient evidence or

---

[4] The only sworn document that Plaintiff has filed in this case is his pretrial narrative statement [Doc. 70]. However, this document does not provide any factual assertions that are relevant to the remaining issue in this case, as he states that, in his encounters with the remaining defendants, they denied his requests for "surgery and proper food diet"; he did not set forth any facts related to the denial of pain medication. Thus, even if the Court were to consider this document as evidence in this case, it does not demonstrate that any genuine issue of material fact remains as to the sole remaining claim in this action.

argument in opposition; at a minimum, the Court is required to examine the motion to ensure that the movant has met its initial burden. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). The Court is not, however, required to "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). "Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are uncontroverted." *Id*. (internal quotation marks omitted). If such evidence supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id*. (alteration omitted).

## III. FACTUAL BACKGROUND

The Court has carefully reviewed the entire record, including those "particular parts of materials in the record" to which Defendants cite in their Motion, accompanying brief, and reply brief. *See* Fed. R. Civ. P. 56(c)(1)(A). The record supports Defendants' recitation of the material facts [*See* Doc. 61 at 3-6; Doc. 82 at 2-5], and the Court will therefore rely on them as uncontroverted:

On January 14, 2016, Inmate Jones was treated by Dr. Jorge Benitez. Inmate Jones' Medical Records from the Tennessee Department of Correction ("TDOC"). During that visit, Dr. Benitez noted that Inmate Jones was "noncompliant wishing only 'his way' for treatment which includes getting daily Lortab." At that visit, Inmate Jones stated that he used to get narcotic pain medication "in the [f]ree world." Dr. Benitez specifically ordered that Inmate Jones not receive narcotic pain medication and that he be tapered off Prednisone.

On January 26, 2016, Inmate Jones had a telemedicine consultation with Dr. Duane Smoot, a gastroenterologist.[5] At that consultation, Inmate Jones explained to Dr. Smoot that he needed narcotic pain medication due to his "severe emotional distress." Dr. Smoot asked Inmate Jones where he was hurting, and Inmate Jones pointed to his upper abdominal area and back—he rated the pain as an 8 out of 10. Inmate Jones said that he needed narcotics; Dr. Smoot responded that "narcotics are not usually given for [treating] Crohn's," but noted that "Tylenol may be used."

Nurse Practitioner Beth Jennings then saw Jones on February 4, 2016, and his chart was reviewed by Dr. Clement on February 9, 2016. At that visit, Inmate Jones "continuously refer[red] to [his] lawsuit." In addition, Dr. Clement prescribed Inmate Jones over-the-counter pain reliever, such as ibuprofen; however, Inmate Jones refused the medicine, stating that ibuprofen "don't work." Inmate Jones declined further trial of Mobic and Naprosyn. Inmate Jones also expressed frustration to Dr. Clement because he could not "get narcotics for pain [management]." Inmate Jones further declined an x-ray recommended by Dr. Smoot, stating that he needed a CT scan instead.

That same day, Inmate Jones wrote a letter to the human resources manager at NECX. Inmate Jones said that Nurse Bowen said "no no no" to pain medication and only prescribed Mobic and ibuprofen for pain. According to him, these prescriptions are "so cursory as to amount to no care at all" because Mobic and ibuprofen are "not proper pain killers for Crohn's sym[p]toms." Inmate Jones requested "proper pain killers, hydrocodone, or opiates." However, Nurse Bowen

---

[5] The Court has previously rejected Plaintiff's attempts to add Dr. Smoot as a defendant to this action, based on the first-to-file rule and Plaintiff's pending action against him in another district [*See* Doc. 24 at 6-21; Doc. 59 at 2 n.2]. The Court notes that, for the purpose of assessing the merits of the instant Motion, it has considered the facts related to Plaintiff's treatment by Smoot only to the extent that such facts are relevant to Plaintiff's interactions with the Defendants and claims remaining in this action.

did not treat Jones in January or February 2016; rather, according to his chart, it appears that Jones was referring to Nurse Alisha Harell who scheduled and conducted the January 26, 2016 telemedicine consult with Dr. Smoot.

On March 10, 2016, Inmate Jones put in a sick call, stating "I just need my Prednisone back, I need something for pain." With regard to the Prednisone, Inmate Jones stated that "I have to be on that, the Doctor can't just take me off it. . . . I got a lawsuit [and] I'll just add this doctor to it." The nurse referred Inmate Jones to a doctor and advised him to return if his symptoms worsened. Inmate Jones was treated by the clinic several times over the next four months.

On July 6, 2016, Plaintiff visited Nurse Bowen, for the purpose of a telemedicine appointment with Dr. Smoot. Nurse Bowen treated Jones, obtained Jones' weight and took his vital signs. Nurse Bowen waited with Jones until 10:17 a.m.; however, Dr. Smoot did not appear for the appointment and Jones' appointment therefore had to be rescheduled. Nurse Bowen did not treated Mr. Jones before or after this date encounter.

On July 8, 2016, Dr. Smoot again saw Inmate Jones via a telemedicine consultation. At the time, Dr. Smoot noted that Inmate Jones was "requesting narcotic pain medications." Dr. Smoot, however, did not recommend narcotics for Inmate Jones' abdominal pain, noting that "patients with Crohn's disease have been shown to do worse after they are placed on chronic narcotics." Dr. Smoot did advise that Inmate Jones be given a non-narcotic medication to help his stomach pain, but noted that the "patient is refusing to try this medication because it is not a narcotic." The medical staff then implemented Dr. Smoot's recommendations over the next two months.

On July 21, 2016, it was reported that Jones refused to see Dr. Clement due to a conflict of interest regarding pending litigation. Nurse Practitioner Ollis therefore conducted a chart review for Jones and scheduled an appointment to see him on August 2, 2016 to discuss his

noncompliance. At his August 1, 2016 appointment, Inmate Jones notably reported to the nurse that he did not have any pain or discomfort.

At his August 2, 2016 visit, Jones reported that "he has not been cared for properly – given proper medical treatment, has filed a lawsuit because he was supposed to have [a] portion of colon removed due to [increased] inflammation [and] mucosa inflammation but has not been offered surgery since he moved from county jail to TDOC." Inmate Jones also said that "Dr. Smoot will not listen to my true problems [and] what's actually wrong [with] me, he's only treating my disease." Inmate Jones also refused his Bentyl medication, stating that no one told him it was for pain and he knows it only treats gas; likewise, he said that he would not take mesalamine because he claims it is the same thing as Bentyl. Inmate Jones stated: "Look, look Miss, I went to medical school to be a doctor, but instead I dropped out to sell crack, but I know what I'm talking about, I done researched [my] condition [and] all those meds [and] I know it's not right what I'm on."

On August 9, 2016, Nurse Practitioner Ollis conducted a chart review regarding Jones' request for a vegan diet and increased fiber. She noted that Dr. Smoot had not ordered a special diet; nonetheless, she did increase Jones' fibernorm per his request, at least until such time that Dr. Smoot recommended further treatment. Again, Jones was non-compliant with his medications.

The next day, Jones refused to see Nurse Practitioner Ollis due to this pending lawsuit. Regarding his request for a special diet, Ollis explained that there "was no need for any special diet until we could do some labs. . . ." Jones then became argumentative, but stopped and said: "Are you Heather Ollis?" Ollis replied that she was "Mrs. Ollis, yes." Jones then stated, "I can't even see you because I have a lawsuit against you." The visit was then stopped because Jones refused to see Nurse Practitioner Ollis.

9

Jones was referred to Nurse Practitioner Ollis on August 15, 2016 for a chart review after he refused his fibernorm; Nurse Practitioner Ollis then discontinued Jones' fibernorm on August 16, 2016. From August 2016 through March 2017, Inmate Jones was seen numerous times by healthcare providers, but he continued to refuse treatment.

## IV. ANALYSIS

It is upon this factual basis that the Court must determine whether Defendants have demonstrated that no genuine issues of material fact remain as to the sole remaining claim in this action: whether Defendants treated Plaintiff with deliberate indifference in declining to provide Plaintiff with *any* medication to relieve pain associated with his Crohn's disease [*see* Doc. 24 at 10-12, 11 n.2, 28-29].

A prison authority's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). "Deliberate indifference 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 737 (6th Cir. 2015) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)). The standard is comprised of both objective and subjective components: the objective component requires a plaintiff to show a "sufficiently serious" deprivation, while the subjective component requires a showing of a sufficiently culpable state of mind—one of deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" (or lack thereof) or by "interfer[ing] with treatment once prescribed." *Estelle,* 429 U.S. at 104-5; *Farmer*, 511 U.S. at 836 (defining deliberate indifference as "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other" and noting that the

10

concept is "routinely equated . . . with recklessness"); *see also Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (quoting *Boretti v. Wiscomb,* 930 F.2d 1150, 1154–55 (6th Cir. 1991), for the proposition that a prisoner has a cause of action for deliberate indifference if he "suffers pain needlessly when relief is readily available").

"[D]eliberate indifference may be established by a showing of grossly inadequate care as well as [by] a decision to take an easier but less efficacious course of treatment." *Perez v. Oakland Cty.*, 466 F.3d 416, 424 (6th Cir. 2006); *see also Comstock v. McCrary*, 273 F.3d 693, 707-11 (6th Cir. 2001) (distinguishing cases of unprofessional and "grossly substandard care" from those cases wherein medical professional "chose one medically reasonable form of treatment over another"). Stated another way, in some cases where a prisoner has been provided some medical attention, the care rendered "may be so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). However, absent a showing of such extreme deficiencies in a prisoner's treatment and care, courts are "reluctant to second guess" medical officials with regard to the adequacy of treatment. *Alspaugh v. McConell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d at 860 n.5 (noting that cases where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment" generally do not rise to a constitutional level, but rather sound in state tort law)).

It is clear from the undisputed facts that Plaintiff's claim is, at its core, a dispute over the course of treatment chosen by the Defendants and other medical care providers. Specifically, Plaintiff maintains that narcotics or opioids are the only "proper" drugs to relieve pain related to his Crohn's disease, but Plaintiff's medical providers maintain that such prescription pain medications are not a safe or effective treatment for Crohn's disease and, as such, have prescribed alternative drug treatments, such as over-the-counter pain relievers. Although Plaintiff may

disagree with the professional judgments and course of treatment prescribed, the Court cannot say that the prescribed course of treatment was medically unreasonable. The record demonstrates that Defendants promptly and consistently responded to Plaintiff's requests for medical care and offered Plaintiff a variety of diagnostic and treatment options. Any deficiencies or delays with respect to Plaintiff's care are not attributable to deliberate indifference by the Defendants, but rather to Plaintiff himself, who routinely declined treatment by the providers in question or in the manner prescribed.

The undisputed evidence demonstrates that the medical attention and care provided to Plaintiff was not so woefully inadequate as to amount to a constitutional violation. Stated another way: although Plaintiff may second-guess the adequacy of the treatment provisions of his providers, he has given the Court no reason to do so. Accordingly, the Court finds that Defendants have met their burden of demonstrating that no disputed issues of fact remain as to Plaintiff's deliberate indifference claims and, as such, they are entitled to judgment as a matter of law.

## V.   CONCLUSION

For the reasons set forth herein, Defendants' construed Motion for Summary Judgment [Doc. 60] is hereby **GRANTED**. Defendants' Motion to take Plaintiff's Deposition [Doc. 75] is hereby **DENIED AS MOOT**. This action is hereby **DISMISSED WITH PREJUDICE**.

The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER**.

_____
**UNITED STATES DISTRICT JUDGE**